UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ALAN FRANCIS, # 562-142, ) | CASE NO.  4:08CV55 |
| ) | |
| PLAINTIFF, ) | JUDGE SARA LIOI |
| ) | |
| vs. ) | |
| ) | **MEMORANDUM OPINION** |
| ) | |
| ) | |
| THOMAS L. ALTIERE, ) | |
| ) | |
| DEFENDANT. ) | |

Before the Court is defendant's motion for judgment on the pleadings (Doc. No. 116), plaintiff's opposition (Doc. No. 131), and defendant's reply (Doc. No. 132).[1] For the reasons discussed herein, the motion is **GRANTED** and this case is dismissed with prejudice.

### I. BACKGROUND

This case was initiated by the pro se plaintiff, Alan Francis ("plaintiff" or "Francis"), on January 9, 2008. Plaintiff sued Trumbull County Sheriff Thomas L. Altiere ("defendant" or "Altiere") for numerous civil rights violations in connection with his pretrial detention in the Trumbull County jail. Plaintiff was granted leave to proceed without prepayment of the filing fee. Defendant filed his answer on May 30, 2008. On June 17, 2008, after receiving notice that the parties consented to the jurisdiction of the

---

[1] In his reply brief, defendant challenges the timeliness of the opposition brief. However, this Court rejects that challenge and concludes that the opposition was timely filed.

magistrate judge, Judge Peter Economus, the district judge assigned to the case, issued an order transferring the case to the docket of Magistrate Judge James S. Gallas.

On April 15, 2009, after full briefing on a motion to dismiss filed by defendant, the magistrate judge issued an order dismissing plaintiff's "Eighth Amendment claims based upon allegations of unsanitary conditions, denial of exercise, showers, mental health treatment, treatment for tremors and hyperventilation and medication." (Doc. No. 74 at 352.) The motion to dismiss was denied "with respect to [plaintiff's] claim of exposure to cold conditions without adequate clothing or bedding." (*Id.*)

Following additional proceedings, defendant filed a motion for summary judgment. On December 17, 2009, the magistrate judge granted that motion and dismissed the case with prejudice. (Doc. Nos. 92, 93.)

Plaintiff appealed only the December 17, 2009 ruling, not the ruling of April 15, 2009. On July 26, 2012, the Court of Appeals for the Sixth Circuit reversed the magistrate judge's summary judgment ruling and remanded for further proceedings. (Doc. Nos. 99, 101.) At that time, the case was assigned to the docket of the undersigned judicial officer, since both Magistrate Judge Gallas and District Judge Economus had by then retired.

On January 31, 2013, after several telephone conferences with the parties and counsel, and having received written statements from both parties, this Court issued an order reviewing the procedural and factual background[2] and listing the following as the remaining claims against defendant Altiere:

---

[2] In this order, the Court also considered plaintiff's request for appointment of counsel. The Court noted

1. Plaintiff's Eighth Amendment claim[7] relating to bedding and clothing while he was kept under suicide watch, which was arguably unnecessarily extended due to failure to re-evaluate him at appropriate intervals. This was the claim that formed the substance of the Magistrate Judge's summary judgment ruling that was overturned by the Sixth Circuit on appeal.[8] These allegations are all found in the "complaint" (Doc. No. 1 at 3, 5; Doc. No. 3 at 20, 20-21; Doc. No. 7 at 38) and this claim survives the remand.

[7] Since plaintiff was a pretrial detainee at the time, the Eighth Amendment's cruel and unusual punishment clause, which concerns permissible punishment following adjudication of guilt, technically does not apply. *Ingraham v.Wright*, 430 U.S. 651, 671-72, n.40 (1977). Rather, state pretrial detainees "are protected under the Fourteenth Amendment, which provides that 'a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law.'"*Miller v. Calhoun Cnty.*, 408 F.3d 803, 812 (6th Cir. 2005) (quoting *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). The protections afforded by the two amendments are essentially the same. Therefore, since the Sixth Circuit referred to the Eighth Amendment in its discussion, this Court will do the same.

[8] The court of appeals criticized the summary judgment ruling for failing to consider, under *Spencer v. Bouchard*, 449 F.3d 721 (6th Cir. 2006), not only the alleged deprivations individually and in combination, but "the interrelationship between the severe conditions and their duration." (Doc. No. 99 at 437.) The court also noted that, because the actual duration of the deprivations of bedding, clothing and mattress was unclear from the record, it could not make the determination in the first instance. (*Id*.). Thus, remand was required.

2. Plaintiff's First Amendment claims, all of which were overlooked by the Magistrate Judge. This fact was conceded by the defendant in its brief before the Sixth Circuit. (*See* Doc. No. 99 at 432: defendant conceded that the "trial court never adjudicated [plaintiff's] allegations not based on the Eighth Amendment.") The First Amendment claims were identified by the plaintiff as follows:

a. "[D]eni[al of] religious services/the right to practice his religion[.]" (Merit Brief at 1.) Specifically, according to his "complaint," he was not allowed to participate in religious services (Doc. No. 1 at 7; Doc. No. 7 at 41, ¶ 10), and was not allowed to watch Pastor Joe Cameneti on local television on Sunday mornings

---

that ten (10) separate attorneys had responded in the negative to the Court's Pro Bono Panel administrator's request to accept an appointment to represent plaintiff. Since there is no right to counsel in a civil case, and since plaintiff had to date successfully represented himself, including on appeal, where he had prevailed, the Court denied the motion. (*See* Doc. No. 115 at 503.)

at 11:00 (Doc. No. 1 at 7). In addition, although not specifically raised in his merit brief, plaintiff generally alleged in his complaint that the right to "active religious service . . . has been 100% denied" for "his entire time at the jail" (Doc. No. 1 at 7; Doc. No. 7 at 41) and that, in August or September of 2007, when his pastor, Mike Roberts, brought him prayer cards, they were not given to him because they were laminated (Doc. No. 7 at 39-40).

b. "Denial of First Amendment right to freedom of speech[.]" (Merit Brief at 1.) Specifically, plaintiff alleges that C.O. Karen Thellman Martin told him he could not talk to "D.L.'s" unless he wanted to join them. (Doc. No. 1 at 3.) He further alleges that, as a general rule applied solely to him, he was not allowed to speak to other inmates and could not exchange any materials between cells. (Doc. No. 1 at 5.)

c. "[D]eni[al of] the First Amendment constitutional right to petition the government for redress of grievances[.]" (Merit Brief at 1-2.) Specifically, plaintiff alleges he was routinely denied the opportunity to file any grievances, at least not without preapproval by a C.O. (Doc. No. 1 at 3-4; Doc. No. 7 at 38-39); that he was refused a grievance form by C.O. Mary Osbourne, who called him a killer, but insisted this was not a grievable matter (Doc. No. 3 at 21); and, that he has filed grievances but never received a response (Doc. No. 7 at 39).

3. Plaintiff's Eighth Amendment claim of "being subjected to disease of the mouth wherein [plaintiff] was given a plastic thimble for a toothbrush with extremely flimsy bristles." (Doc. No. 99 at 432, citing Merit Brief at 1-2.) This claim was overlooked by the Magistrate Judge in both his rulings.[9]

[9] The court of appeals concluded "that the magistrate judge's failure to address claims was not limited to non-Eighth Amendment claims[;]" it directed this Court, on remand, to "ascertain precisely which [Eighth Amendment] claims were overlooked." (Doc. No. 99 at 433.) In its brief, defendant states that plaintiff's claims relating to fecal matter smeared on cell walls, desks and beds, and the denial of appropriate supplies to clean the same, both remain in the case following remand. The Court disagrees, as these claims were dismissed by the April 15, 2009 order that was not appealed.

4. Plaintiff's Sixth and Fourteenth Amendment claim relating to denial of access the courts, specifically, his allegation that he was denied access to the law library and legal materials. (Doc. No. 1 at 3; Doc. No. 3 at 21.)[10]

> [10] Although plaintiff's merit brief before the Sixth Circuit assets allegations of denial of a notary and that his legal mail was opened out of his presence, the Court finds no such allegations in any of the three parts of the "complaint" and, therefore, no such claim survives the remand.

(Doc. No. 115 at 506-09, footnotes in original.)

On March 4, 2013, defendant filed the instant motion for judgment on the pleadings, which is now fully briefed and ready for determination.

## II. DISCUSSION

**A.     Applicable Law**

Fed. R. Civ. P. 12(c) permits a party to move for judgment on the pleadings "[a]fter the pleadings are closed but within such time as not to delay the trial[.]" Plaintiff does not challenge the timeliness of defendant's motion and the Court determines that, given the procedural posture of the case, the motion was timely filed.

When reviewing a motion for judgment on the pleadings, the Court uses the same standard as on a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008). "[A]ll well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007). However, the United States Supreme Court has held:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombley*, 550 U.S. 544, 570 (2007)).

B.     **Discussion**

Defendant argues that, to the extent the complaint seeks relief against him in his individual capacity, he is entitled to qualified immunity, and, to the extent the complaint seeks to hold him liable in his official capacity,[3] it fails to state a claim under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978).[4]

1.     **Qualified Immunity**

Defendant argues that he is entitled to qualified immunity in his individual capacity.

The doctrine of qualified immunity shields government officials "from liability for civil damages insofar as *their conduct* does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (emphasis added). Qualified immunity is assessed with respect to "each individual's specific conduct[.]" *Reilly v. Vadlamudi*, 680 F.3d 617, 624(6th Cir. 2012). "Because § 1983 liability cannot be imposed under a theory

---

[3] The complaint does not specify whether Altiere is sued in his individual capacity, his official capacity, or both. In *Wells v. Brown*, 891 F.2d 591 (6th Cir. 1989), the Sixth Circuit held that a plaintiff seeking damages under § 1983 must clearly state in his pleadings that he is suing a state official in his individual capacity. *Id*. at 592. The Sixth Circuit subsequently clarified that a failure to state explicitly the capacity in which a defendant is sued "is not fatal if the course of proceedings otherwise indicates that the defendant received sufficient notice [of the potential for individual liability.]" *Moore v. City of Hardiman*, 272 F.3d 769, 772 (6th Cir. 2001) (en banc), *cert. denied*, 536 U.S. 922 (2002). In his opposition to the instant motion, Francis moves the Court, without any argument or citation to case law, to consider his claims in both capacities. Although this request is tardy, given Francis's pro se status the Court will allow some leeway.

[4] Defendant also argues that, should plaintiff's claims survive these arguments, they nonetheless must otherwise be dismissed on the merits. The Court sees no need to address any of the claims on the merits since plaintiff does not, and cannot, connect his alleged constitutional violations to actions by Sheriff Altiere himself.

of *respondeat superior*, proof of personal involvement is required for a supervisor to incur personal liability." *Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 n.3 (6th Cir. 2005).

Here, plaintiff has not alleged any specific conduct by defendant Altiere. He merely asserts that "[t]he sheriff here puts my health and safety in jeopardy as he has never complied with the law to check on inmates [sic] condition." (Doc. No. 7 at 37.)[5] He further asserts that the "unprofessional demeanor within [the jail] . . . reflecting the sheriff's department, as a whole, is quite distressing to me." (*Id*. at 39.)

Plaintiff fails to plead facts alleging that defendant was personally involved in any of the actions or events underlying his claims. In his opposition brief, plaintiff argues that Altiere has violated Ohio Rev. Code §341.04, which provides: "The sheriff shall visit the county jail and examine the condition of each prisoner, at least once during each month."  However, even if that were true, which defendant denies, "[s]tate law, by itself, . . . cannot supply the foundation for a federal constitutional violation." *Horner v. Klein*, 497 F. App'x 484, 489 (6th Cir. 2012) (citing *Smith v. City of Salem*, 378 F.3d 566, 578 (6th Cir. 2004)).[6]

In addition, plaintiff argues that defendant has shown "repeated disregard for his duty," and has an "absolute inability to show he in any way, shape, nor form acted in good-faith to protect the rights of the Plaintiff." (Opposition at 602.) However, "[a]

---

[5] The Court has previously construed three documents as constituting the full complaint: the original Complaint (Doc. No. 1), the Statement of Claims (Doc. No. 3), and the Extended Statement of Claims (Doc. No. 7).

[6] "At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Vague allegations in the complaint that certain "unprofessional demeanor" reflects "the sheriff's department" do not suggest authorization or approval by Sheriff Altiere of any unconstitutional conduct by others. Furthermore, conduct, not mere demeanor, is all that is relevant for a section 1983 analysis.

successful § 1983 claimant must establish that the defendant acted knowingly or intentionally to violate his or her constitutional rights, . . . such that mere negligence or recklessness is insufficient." *Ahlers v. Schebil*, 188 F.3d 365, 373 (6th Cir. 1999) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982)).

There being no redressable allegations against defendant Altiere in his individual capacity, he is entitled to qualified immunity and to judgment on the pleadings in his individual capacity.

### 2. Lack of *Monell* Claims

Defendant also argues that plaintiff fails to allege any *Monell* claim under which defendant might be held liable in an official capacity. "Because a suit under section 1983 against a defendant 'in his official capacity' is equivalent to a suit against the local government entity," *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1245 (6th Cir. 1989), "before a local government can be held liable for injuries under section 1983, . . . a plaintiff must show that his injuries were the result of some 'policy or custom' attributable to the governmental entity." *Id.* (citing *Monell*, 436 U.S. at 690).

Here, there is no allegation of an official policy or custom that caused or played a part in the alleged constitutional violations.[7] Therefore, defendant is entitled to judgment on the pleadings in his official capacity.

---

[7] Plaintiff's passing comment that certain "unprofessional demeanor" is reflective of the "sheriff's department, as a whole," is insufficient to salvage his complaint.

## III. CONCLUSION

For the reasons set forth herein, defendant's motion for judgment on the pleadings (Doc. No. 116) is **GRANTED**. All of plaintiff's claims are dismissed with prejudice.

The Court certifies that an appeal from this decision could not be taken in good faith. 28 U.S.C. § 1915(a)(3).

**IT IS SO ORDERED**.

Dated: October 21, 2013

                                              **HONORABLE SARA LIOI**
                                              **UNITED STATES DISTRICT JUDGE**